## McHenry Rhoads, et al., Trustees of the Kentucky Industrial College for Colored People, etc. v. William J. Fields, et al., Commissioners of the Sinking Fund of the Commonwealth.

(Decided March 25, 1927.)

### Appeal from Franklin Circuit Court.

Colleges and Universities.—Under Constitution, sections 48, 185, and Carroll's 1922 Ky. Stats., sections 4588-4606a-7, commissioners of the sinking fund of the commonwealth have no authority to provide funds for reconstruction of building of Industrial College for Colored People organized pursuant to Acts 1885-86, c. 1297, after it had been destroyed by fire, nor did they have power to authorize trustees of college to do so at expense of state.

HOBBS & HANSEN for appellants.

FRANK E. DAUGHERTY, Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Kentucky Industrial College for Colored People (hereinafter referred to as "college") is located in Frankfort, Kentucky.   On December 13, 1926, fire destroyed the girls' dormitory, one of the buildings on the grounds of the college.   The insurance carried thereon lacked about $100,000.00 of being enough to reconstruct the destroyed dormitory, and the trustees of the college possessed no funds to supply the deficit and with which the building could be constructed.   They applied to the appellees and defendants below, the Commissioners of

the Sinking Fund of the Commonwealth (hereinafter referred to as "commissioners"), of which Governor William J. Fields is chairman, and requested that body to either itself provide the necessary funds at the expense of the state, or to authorize the trustees of the college to do so. The commissioners declined to do either, upon the ground that they possessed no such authority, and the appellants and trustees, as plaintiffs below, brought this action in the Franklin circuit court to obtain a mandatory order requiring them to perform one or the other request. The petition frankly confessed that counsel who drafted it was unable to find or produce any express authority in the commissioners to perform either of the requests made of them, either contained in the Constitution or any statute. But it was alleged and insisted therein that because of the pressing emergency growing out of the facts alleged therein, the commissioners possessed *implied* authority to grant the requests made of them, and a mandatory order to that effect was asked. Defendants demurred to the petition, which the court sustained, and plaintiffs declining to plead further, their petition was dismissed and they prosecute this appeal.

The only sections of the Constitution making any reference to the sinking fund or the commissioners thereof are Nos. 48 and 185. The first one says: "The general assembly shall have no power to enact laws to diminish the resources of the sinking fund as now established by law until the debt of the commonwealth be paid, but may enact laws to increase them; and the whole resources of said fund, from year to year, shall be sacredly set apart and applied to the payment of the interest and principal of the state debt; and to no other use or purpose, until the whole debt of the state is fully satisfied." The second one relates to the payment of interest on the bonds and stocks held by the State Board of Education as a perpetual and inviolate common school fund, as is set forth in section 184 of the Constitution, and the section (185) further authorizes the commissioners to sell the stock in the bank of Kentucky amounting to $73,500.00 and to invest the proceeds in other interest bearing stocks or bonds. Neither of those sections contains any language from which the authority herein sought to be enforced by the commissioners could possibly be inferred or implied. On the contrary, the sections expressly limit the authority of the commis-

sioners over the funds therein mentioned, and which excludes the power and authority herein contended for by plaintiffs.

The statutory law applicable to the duties, powers and authority of the commissioners is contained in sections 4588-4606a-7, both inclusive, of Carroll's 1922 edition of Kentucky Statutes, with, perhaps, some scattering enactments upon special subjects having no bearing whatever on the question here involved. The sections of the statute referred to compose the entire chapter 118 of the 1922 edition of the statutes, and which was chapter 101 of the old general statutes as later amended. In none of them is there any reference to school funds, except in section 4591a, by the terms of which the commissioners are authorized to issue to themselves as trustees of the A. & M. College of Kentucky and the State Normal School for Colored Persons of Kentucky the bonds of Kentucky to a named limit which when done would become a perpetual obligation and the interest a perpetual charge upon the treasury and payable to the two institutions named semi-annually in the amounts designated therein. Section 4601 of the same chapter expressly says: "No money shall be paid into or drawn from the treasury on account of the sinking fund but in the manner prescribed in sections 4686 and 4688 of the chapter prescribing the duties of treasurer." The last section referred to therein (4688) expressly states, *inter alia,* "and no such check (issued by the treasurer) shall be given by the treasurer, even though the auditor issues a warrant therefor, unless the law under which the money may be claimed expressly directs and orders that it shall be paid out of the public treasury." It will be noted that section 48 *supra* of the Constitution, in referring to the sinking fund of which the commissioners have charge, says: "Said fund, from year to year, shall be sacredly set apart and applied to the payment of the interest and principal of the state debt, and to no other use or purpose, until the whole debt of the state is fully satisfied." The legislature, in enacting all the sections composing chapter 118 *supra,* regulated and prescribed rules for the management of the sinking fund by the commissioners, but did not, as it could not, enlarge their powers as prescribed in section 48 of the Constitution.

The college of which plaintiffs are trustees was organized pursuant to the provisions of chapter 1297, page

232, Acts of 1886, and a reference thereto will show that the trustees were authorized to accept private donations for the purpose of establishing the school and erecting its necessary buildings. They were also authorized, in the same manner, to select the location and suitable grounds, which was later done and the school was located in Frankfort, where it has since remained. Under the creating act there was appropriated out of the treasury of the commonwealth $3,000.00 annually for the maintenance of the school, and similar appropriations have been made to it by succeeding legislatures in varying amounts, illustrations of which are to be found in sections 4534, 4534a, 4534b, 4534c, and 4534d of the 1922 edition of our statutes, and the amount so appropriated for the year 1924 was $40,000.00 (see Acts 1922, page 314) and certain amounts for the year 1923, (see page 335 of the Acts for that year). The 1924 session of the legislature made similar appropriations for subsequent years (see Acts of that year, pages 369 and 391) and the session of 1926 made certain other appropriations for the same purpose (see section 44, chapter 11, page 33, Acts for that year.) All such appropriations made biennially at different sessions of the legislature were done for specific purposes and they have long since been consumed, and there is no general statute anywhere by which any fund has been created or any legislative appropriations made from which the expenses of reconstructing the destroyed dormitory of the college could be defrayed.

The commissioners, therefore, have no fund under their control or management from which such expenses might be drawn, and it is fallacious to contend that they have authority to *contract a debt* against the commonwealth for the purpose. Possessing no power or authority to make the expenditures themselves, it necessarily follows that they could not delegate any such power and authority to the trustees of the college; and the emergency of the situation, so strongly presented in brief of counsel for plaintiffs, though fully realized, can not be given the effect to nullify express provisions of the Constitution and of the statutes limiting the power and authority of the commissioners; nor can they act between sessions of the General Assembly as a sort of *ad interim* legislature, as the contention of counsel would seem to imply. If the capitol of the state in Frankfort should be destroyed by fire or by other causes, no one familiar with our Constitution or statutes would contend that the com-

missioners had authority to reconstruct it in the absence of any previous appropriation made for the purpose and over which they were given control. The same is true with any public institutional building, and the destruction of which would create perhaps a greater emergency than is urged in this case. Of course, it would no doubt be competent for the legislature to create a sufficient emergency fund and appropriate it for the purpose of meeting such catastrophes; in which case the commissioners could be designated as the agency of the commonwealth to take the necessary action for restoration, or the legislature might designate or create any other agency for the purpose, but nothing of the kind has been done and no such emergency appropriation has been made, and there is no way to obtain relief for the consequences of the calamity except to await the next regular session of the legislature, or the calling of a special one for the purpose of taking such action as might be necessary.

Since, therefore, the commissioners have neither the funds at their command, nor the authority to create a debt in the manner and for the purposes requested, the court properly sustained the demurrer filed to the petition, and likewise properly dismissed it upon failure of plaintiffs to plead further.

Wherefore, the judgment is affirmed.